UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

In re:                                      )
                                            )
    GUILLERMO AVELLANEDA             )     Case No. 09-18106-SSM
    JENNY AVELLANEDA                 )     Chapter 13
                                            )
        Debtors                      )

**MEMORANDUM OPINION AND ORDER**

The sole issue raised by the objection of Thomas P. Gorman, standing chapter 13 trustee, to confirmation of the modified plan filed by the debtors is whether unemployment income received during the six-month period before the filing of the petition must be included in the calculation of current monthly income and, if so, whether the plan fails the disposable income test by requiring payments for only 36 months rather than 60 months. Following a hearing on December 9, 2009, debtors' counsel submitted for the court's review a detailed account of the unemployment compensation that had been paid in the six months prior to the bankruptcy filing. Because including the unemployment income would not result in the debtors' calculated "current monthly income" exceeding the state-wide median for a family of the same size, the means test—including the extended commitment period for above-median income debtors—is not implicated, and the court therefore need not decide the thorny issue of whether unemployment income is a benefit under the Social Security Act.

Background

Guillermo and Jenny Avelladeda are husband and wife.  They filed a voluntary petition in this court on October 2, 2009, for adjustment of their debts under chapter 13 of the Bankruptcy Code.  After an objection was filed to their initial plan, they filed the modified plan that is currently before the court on October 30, 2009.  The plan requires the debtors to pay the chapter 13 trustee $256 per month for 36 months and projects a dividend to unsecured creditors of one cent on the dollar.  On their schedules, the debtors report monthly take-home income of $8,156 and monthly expenses of $7,900, leaving $256 a month with which to fund payments under a plan.  The reported income includes $1,200 in unemployment benefits.  On their Chapter 13 Statement of Current Monthly Income and Calculation of Commitment Period and Disposable Income (Form B22C), they report Current Monthly Income ("CMI") of $5,579.50, a household size of 3, and an annualized CMI of $66,954.00, which is less than the Virginia statewide median income of $73,191.00 for a household of the same size.  It is undisputed that they did <u>not</u> include in the calculation of current monthly income a total of $3,046.00 in unemployment income received by Mr. Avellaneda from the Virginia Employment Commission during the six-month period from April through September 2009.[1]  The unemployment compensation, if included in the CMI calculation, would have increased it to $6,087.17, which in turn would have increased

---

[1] The debtors failed to document the omission on Line 8 of the form, as required by the instructions.  The drafters of Form 22C took an agnostic position on the issue of whether unemployment income had to be included in the calculation of current monthly income but required transparency.  That is, a debtor must in any event *report* the average monthly amount of unemployment benefits received in the six months preceding the filing of the petition, but may "contend" that the amounts received were "a benefit under the Social Security Act," in which case they are not listed in columns A or B, but instead in boxes specifically provided for that purpose.  The debtors here did not do so but simply omitted the amounts altogether.

the annualized CMI to $73,046, which is still below (although just barely) the state-wide median income for a household of three.

## Discussion

A chapter 13 debtor whose plan does not pay unsecured claims in full must pay his or her "projected disposable income" into the plan for at least the "applicable commitment period." § 1325(b)(1), Bankruptcy Code. A chapter 13 debtor's "current monthly income" (CMI) impacts this requirement in two significant respects. If it exceeds the state-wide median for a household of the same size, the applicable commitment period is 60 months, and the calculation of disposable income is based on the "means test" introduced by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"). *Id.* § 1325(b)(3), (4)(A)(ii). Otherwise, the applicable commitment period is 36 months, and disposable income is determined by reference to the debtor's schedules of income and expenses, with adjustments for expenses found to be unsubstantiated or unjustified. *Id.* § 1325(b)(2), (4)(A)(ii).

CMI is a term of art and is calculated as the average monthly income received by the debtor "from all sources" during the six-month period ending on the last day of the calendar month immediately preceding the date of the commencement of the case. *Id.* § 101(10A)(A). Certain amounts, however, are excluded from the calculation. Relevant to the present controversy, these include "benefits received under the Social Security Act." *Id.* § 101(10A)(B). The question of whether state-administered unemployment benefits constitute "benefits received under the Social Security Act" has divided the courts. At the time this opinion is written, the score card of reported decisions is two holding that such benefits are indeed "received" under the Social Security Act, while two strongly argue that they are not. *Compare In re Munger*, 370

B.R. 21 (Bankr. D. Mass. 2007) *and In re Sorrell*, 359 B.R. 167 (Bankr. S.D. Ohio 2007) (both holding that unemployment benefits are received under the Social Security Act) *with In re Baden*, 396 B.R. 617 (Bankr. M.D. Pa. 2008) *and In re Kucharz*, -- B.R. --, 2009 WL 3518163, at *4 (Bankr. C.D. Ill. Oct. 28, 2009) (both holding that unemployment benefits are not received under the Social Security Act). Although compelling arguments can be made each way, the court need not—indeed may not—enter into the fray in the context of the present case. Bankruptcy courts, like other federal courts, are constitutionally limited to deciding "cases and controversies" and may not render advisory opinions. *See North Carolina v. Rice*, 404 U.S. 244, 246, 92 S.Ct. 404, 404, 30 L.Ed.2d 413 (1971) (explaining that federal courts may not "decide questions that cannot affect the rights of litigants in the case before them."). In the present case, including the unemployment compensation in the calculation of CMI does not result in the annualized CMI exceeding the state-wide median and therefore does not trigger the 60-month commitment period or the means test. Accordingly, whether unemployment benefits should or should not have been included in the calculation has no impact on confirmation of the plan before the court. It will be soon enough, in a case in which the outcome would be affected, for the court to decide the question raised by the trustee.

For the reasons stated, the objection to confirmation will be overruled and the plan will be confirmed. The trustee will submit a standard form of confirmation order and wage order.

Date: _____    _____
                                  Stephen S. Mitchell
Alexandria, Virginia              United States Bankruptcy Judge

Copies to:

Guillermo Avellaneda
Jenny Avellaneda
10003 Hampton Road
Fairfax Station, VA 22039
Debtors

Martin H. Lopez-Novillo, Esquire
Property & Estate Law, PLC
1950 Old Gallows Road, Suite 220
Vienna, VA 22182
Counsel for the debtors

Thomas P. Gorman, Esquire
300 N. Washington St., Suite 400
Alexandria, VA 22314
Chapter 13 Trustee